UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEECO INTERNATIONAL, INC. | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-09-4003 |
| | § | |
| SUPERIOR DEGASSING SERVICES, INC. AND | § | |
| DAVID GONZALES, | § | |
| Defendants. | § | |

## SUMMARY JUDGMENT OPINION

This trade secret dispute is before the court on defendants' motion for summary judgment on all of plaintiff's claims in this case (Dkt. 39). Having considered the record, the parties' submissions, oral argument at a hearing on May 6, 2011, and the law, the court grants in part and denies in part defendants' motion.

## Factual Background

Weeco is a Houston company engaged in the business of Volatile Organic Compound emission control and tank degassing. Weeco markets its business though a brochure, which is the subject of a pending application for copyright registration. Defendant David Gonzalez was employed by Weeco from 1998 through 2006. In the course of his employment, Gonzalez had access to the Weeco brochure, as well as to Weeco's technical and client information. In 2001, Gonzalez executed a Confidentiality and Non-Competition Agreement promising not to disclose Weeco's confidential information and not to compete with Weeco for two years after termination of his employment.

Soon after leaving Weeco, Gonzalez incorporated a new company, Superior Degassing Services, Inc., in May 2007.  Gonzalez, with help from his brother and an associate, built a degassing trailer and through Superior Degassing Services began engaging in the same business as Weeco.  Like Weeco, Superior Degassing Services markets itself to clients through a brochure describing its services.

In December 2009, Weeco sued Gonzalez and Superior Degassing Services alleging causes of action for violation of Section 501 of the Copyright Act, 17 U.S.C. § 101 *et seq.*, trade secret misappropriation, breach of contract, business disparagement, injury to business reputation under Texas Business and Commerce Code § 16.29, breach of fiduciary duty, and tortious interference with prospective business relationships.  Defendants seek  summary judgment on all of Weeco's claims.[1]

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The  party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable

---

[1]  Weeco did not respond to defendants' motion for summary judgment as to its common law business disparagement and § 16.29 claims.  Weeco's counsel confirmed on the record at the May 6 hearing that it does not oppose summary judgment on those claims, which are dismissed.

jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

A summary judgment movant who bears the burden of proof on a claim must establish each element of the claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

## Analysis

### A.   Copyright Infringement

In order to establish copyright infringement, Weeco must establish (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are copyrightable. *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994). The first element requires proof of originality, copyrightability of the work as a whole, and

3

compliance with applicable statutory formalities.  *Engineering Dynamics, Inc.*, 26 F.3d at 1340; *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995).  A valid copyright certificate of registration constitutes *prima facie* evidence of the validity of a copyright.  *Id.*(citing 17 U.S.C. § 410(c)).  This presumption is rebuttable, and the burden is on defendants to produce evidence of invalidity of the plaintiff's copyright.  *Id.* (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 n.10 (5th Cir. 1991).

The second element requires proof of (1) factual copying, which may be inferred from access to the copyrighted work together with "probative similarity"; and (2) actionable copying, which requires "substantial similarity" between the two works.  *Engineering Dynamics, Inc.*, 26 F.3d at 1340-41; *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010).  In determining actionable copying, the court filters out non-protectable material such as processes, methods, scientific discoveries, facts, ideas, information in the public domain, and expressions that are standard, stock, or common to a particular subject matter or are dictated by external factors.  *See Engineering Dynamics*, 26 F.3d at 1344,  *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir. 1994).  Actionable copying ultimately is determined by a detailed side by side comparison of the copyrighted and allegedly infringing works to determine whether they are substantially similar.  *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997).

Defendants argue for summary judgment on Weeco's copyright infringement claim because (1) Weeco does not own a valid copyright; and (2) the brochures are not substantially similar.

*Ownership*.  Weeco has submitted a copyright registration certificate for its brochure. It is defendants' burden to rebut the presumption that Weeco's registration is valid.

Weeco's marketing brochure is copyrightable.  *See Day-Brite Lighting, Inc. v. Sta-Brite Flourescent Manuf. Co.*, 308 F.2d 377, 380 (5th Cir. 1962).  And "extremely little originality is essential for the copyright of an advertisement."  *Id.*  The remaining issue here is whether Weeco complied with statutory formalities.

"Immaterial, inadvertent errors in an application for copyright registration do not jeopardize the registration's validity."  *One Treasure Ltd., Inc. v. Richardson*, 202 Fed. App'x 658, 660 (5th Cir. 2006) (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161 (1st Cir. 1994)).  "Courts have repeatedly excused a wide range of errors, . . . including misidentification of copyright claimant, misclassification of a work, misstatement of work's author, misstatement of a work's creation and publication dates, and misstatement that a work is made for hire."  *Id.* (citing 2 Nimmer § 7.20 and cases cited therein).

Defendants primarily argue, based on *Geoscan, Inc. v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000), that the copyright is invalid because Weeco deposited with its application only 3 pages of its 4-page brochure.  In *Geoscan*, the copyright applicant submitted partial, *later* versions of the source code it sought to protect, and not the original

5

work as required by the Copyright Act.  *Id.* (emphasis added).  In this case the missing page

contained no photographs or artwork, but only a brief listing of services provided, client

references, and contact information.  The court is not persuaded that *Geoscan* supports the

conclusion that Weeco's omission of this single page renders the entire filing void.  The other

deficiencies cited by defendants, such as misidentifying the copyright claimant and

misstating the date of publication,[2] are the sorts of factual misstatements that are generally

overlooked by the courts absent some evidence of intent to defraud the copyright office.  *One

Treasure Ltd.*, 202 Fed. App'x at 661.

Defendants further argue the Weeco did not own the copyright at the time of

registration, nor did they own the right to bring a cause of action for past infringement at the

time this suit was filed.  An assignment nunc pro tunc transferring the copyright to Weeco

from the prior holder, Charles K. H. Choi, was signed in January 2011.  The assignment

recites that it is effective as of March 27, 1996, and that it was always Choi's intention and

understanding, despite no earlier written assignment, that Weeco would own all right, title,

and ownership in the copyright at issue.  Defendants have provided no authority or evidence

to question the validity of this assignment.[3]

---

[2]    *See* Defendant's motion to dismiss (Dkt. 36) (denied by Dkt. 43), at 4-5.

[3]    *See Wood v. BL Building Co.*, Civil Action No. H-03-713, 2004 WL 5866352 *5 (June 22, 2004) (a writing memorializing an earlier oral agreement, signed by both parties, cures defects in standing even if executed after a suit challenging the copyright was filed).

Defendants are not entitled to summary judgment based on the ownership element of the copyright claim.

***Copying***.  Copying as a factual matter requires proof (1) that defendant had access to the copyrighted work prior to creating the copy, and (2) the works contain similarities that are probative of copying.  *Amour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007); *Engineering Dynamics*, 26 F.3d at 1340.  There is no dispute that David Gonzalez had access to Weeco's brochure, or that his company, Superior Degassing Services, later produced a brochure describing degassing services.  However, Weeco cannot clear the substantial similarity hurdle required for actionable copying.

Two works are substantially similar where "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same." *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992).  While substantial similarity is ordinarily a question for a jury to determine by comparing two works side-by-side, summary judgment is appropriate where the alleged copy differs in so many respects that a juror could not reasonably conclude the works are substantially similar.  *See Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997).

Here, the competing brochures do not look alike at all.[4]  The pictures are different, the letter fonts are different, the page-layout is different. The only similarity they share is seen in one of several Weeco diagrams for tank degassing, specifically the diagram for aboveground storage tanks.  But there are substantial differences between the diagrams, including the shape of the components, the look of the arrows, the placement of the labels, the size of the diagrams, and the placement on the page.  The process described in the diagram fits comfortably into the category of non-protectable material described in *Engineering Dynamics*.[5]  For these reasons, the court grants defendants' motion for summary judgment on Weeco's copyright infringement claim.

### B.    Trade Secret Misappropriation

Under Texas law, a trade secret is any formula, pattern, device, or compilation of information that is used in one's business, and which gives an opportunity for advantage over competitors who do not know or use it.  *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).  The owner of trade secret must be vigilant in guarding its secrecy. *Id.* at 457; *see American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 274, 278 (Tex. App.– Houston [1st Dist.] 1988, no writ).  Information discoverable by

---

[4]    Compare plaintiff's ex. 1 (Weeco brochure) with plaintiff's ex. 4 (Superior Degassing brochure).

[5]    Defendant has produced pictures from the website of degassing competitor Envent depicting diagrams that look even more like the ones on Weeco's brochure than do the Superior diagrams.

8

inspection is not a trade secret.  *Research Equip. Co. v. C.H. Galloway & Scientific Cages*, 485 S.W.2d 953, 956 (Tex. Civ. App. – Waco 1972, no writ).  In order to qualify as a trade secret the information must have a modicum of originality to separate it from everyday, general knowledge.  *Phillips v. Frey*, 20 F.3d 623, 628 (5th Cir. 1994); *Lamons Metal Gasket Co. v. Taylor*, 361 S.W.2d 211, 213 (Tex. Civ. App. – Houston [1st Dist.] 1962, writ re'f n.r.e.).

In order to prove misappropriation of a trade secret, Weeco must show (1) it owned a trade secret; (2) breach of a confidential relationship or discovery of the secret by improper means; (3) use of the trade secret; and (4) damages.  *Trilogy Software, Inc. v. Callidus Software, Inc.*. 143 S.W.3d 452, 463 (Tex. App. – Austin 2004, pet. denied).

Weeco contends that defendants misappropriated the following trade secrets:  (1) the fabrication and usage of the degassing trailer; (2) procedures for degassing various tanks and gasses; (3) Weeco's contacts; (4) Weeco's rate information and profit margins; (5) Weeco's customer reports for various degassing jobs; and (6) Weeco's business forms.

*__Fabrication of the Degassing Trailer.__*  Of course, not everything that is a part of the "fabrication and usage of the degassing trailer" is a trade secret.[6]  For instance, the exterior design of the degassing trailer is visible to anyone walking by it.  Yet, particular elements of the fabrication that are not visible on casual inspection, not disclosed by Weeco in its own

---

[6]    "Usage" of the trailer presumably relates to Weeco's degassing procedures, which are addressed separately.

9

publications, and not commonly used in the industry, could constitute trade secrets.  There is evidence that Gonzalez learned about certain aspects of the fabrication of the degassing trailer only through his employment by Weeco.[7]  Weeco also has presented evidence that Gonzalez clandestinely photographed the trailer, and wrongfully took a blower and propane regulator belonging to Weeco to analyze how they worked.[8]  This evidence is some indication that not everything about the trailer is open and obvious and well-known in the industry.  On the other hand, there is evidence that Weeco never asked mechanics working on its degassing trailers to keep any aspect of the design or fabrication secret.[9]  But the existence of a trade secret is a fact-intensive inquiry,[10] and the court is not persuaded that this evidence alone is sufficient to defeat Weeco's trade secret claim as to the fabrication of the trailer as a matter of law.  *See  Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200-01 (5th Cir. 1986) ("although the law requires secrecy, it need not be absolute.").

---

[7]     *See* Gonzalez dep., at 65-74 (discussing specific components of the trailer design) (Dkt. 49-8).

[8]     Affidavit of Joe Gonzalez (Dkt. 49-9).

[9]     *See* Affidavits of John Harrison, Doug Courtney, Jr., Juan Merito (Dkt. 39-6).  Weeco objects to the Harrison and Courtney affidavits because those individuals have not been designated as experts.  The objection is overruled.  The witnesses are competent to testify from their personal experience working on the trailers for Weeco whether there was anything out of the ordinary about the degassing trailers.  They are also competent to testify that Weeco did not treat any aspect of the trailer as confidential, and that is the purpose for which the court has considered them.

[10]     *American Precision*, 764 S.W.2d at 739 (determination of trade secret based on a comparative evaluation of all relevant factors).

Defendants' motion for summary judgment on Weeco's claim for misappropriation of its trade secrets relating to the fabrication of the trailer is denied.

**_Procedures_**.  Weeco posted some of its purportedly confidential procedures on its website.[11]  This act is inconsistent with any intent to maintain secrecy, and Weeco conceded at the May 6 hearing that it cannot base its misappropriation claim on the publicly available procedures.  But Weeco contends that it has 76 other procedures that were provided to Gonzalez that have not been publicly disclosed.[12]

Weeco cites _K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv._, 314 S.W.2d 782, 789 (1958), for the proposition that when money and time are invested in developing a procedure that is new to a particular industry and that is not generally known, trade secret protection exists.  Casey Youn testifies that he invested significant money to acquire the technology of the degassing trailer, and used his education and experience to develop the procedures at issue.[13]  The court concludes that there are disputed fact issues for trial on Weeco's claim for misappropriation of its 76 procedures.[14]

**_Other alleged trade secrets_**.  In contrast to the information discussed above, Weeco has not met its burden to establish a genuine issue of material fact that its client contacts

---

[11]    Defendants' ex. D (Dkt. 39-3).

[12]    Plaintiff's ex. B-3, filed under seal at Dkt. 48-1, includes 8 allegedly confidential procedures.

[13]    Affidavit of Casey Youn (Dkt. 49-4).

[14]    This ruling is based on the court's understanding that the 76 procedures are separate from and not duplicative of those published on Weeco's website.

(which were published on its website[15]), rates (which are apparent from its customer invoices), customer reports (which were disclosed to clients without a confidentiality agreement,[16] and which in part were required by law[17]), or business forms (which consist of form tank degassing log sheets[18]) constitute trade secrets.  Defendants' motion for summary judgment will be granted as to Weeco's claim for misappropriation of each of these purported trade secrets.

### C.    Breach of Contract

Gonzalez signed a Confidentiality and Non-Competition Agreement on January 4, 2001.  Gonzalez agreed that:

> the customer lists, chemical formula, manufacturing processes, operating procedures, devices, techniques, plans, methods, drawings, blueprints, reproductions, data, tables, calculations, letters, or other paper work, documents and know-how used in the business of Weeco International Corporation are the sole property of Weeco International Corporation, and that any use of the property and trade secrets by the Undersigned [Gonzalez] other

---

[15]    Robbie Perkins at Dow Hahnville was not on the published list, but there is no evidence that his identity or contact information was in any way secret.  He routinely received cold calls from people wanting to perform services at the site.  Perkins dep. (Dkt. 49-10), at 30.

[16]    Weeco stamped them "confidential," but there is no evidence of any confidentiality agreement with customers, and there is evidence that Dow Hahnville employee Perkins did not make any effort to maintain their confidentiality.  *See* Perkins dep. (Dkt. 49-10), at 14-15; Jeffrey Jozwiak dep. (Dkt. 49-12), at 34-35.

[17]    Gonzalez Affidavit, at 4-5 (Dkt. 39-6).  Weeco objects to much of Gonzalez's Affidavit, but not to the part relied upon by the court.  The affidavit does contain some information no longer relevant to claims in this case (such as statements regarding Weeco's alleged failure to pay overtime), but overall it is admissible.  Weeco's objections are overruled.

[18]    Response, at 25 (Dkt. 49).

than for the sole benefit of Weeco International Corporation would be wrongful and would cause irreparable harm to Weeco International Corporation.[19]

Gonzalez agreed that he would not, at any time:

publish, disclose or divulge to my [sic] person, firm, corporation, or use, directly or indirectly, for his own benefit or for the benefit of any person, firm or corporation or use other confidential information of Weeco International Corporation, any property, trade secrets or confidential information of Weeco International Corporation and/or its affiliates, learned or obtained by him during the course of his employment with Weeco International Corporation, including, but not limited to, the information as set forth in the paragraph above.[20]

Gonzalez further agreed:

not to take employment for another company or engage in business for himself for a period of two years in the specific field of tank degassing and VOC emissions control after termination of employment with Weeco International Corporation.[21]

Weeco has sued Gonzalez for breach of the Confidentiality and Non-Competition Agreement.  Gonzalez argues that the contract is invalid because it is not supported by consideration and because the non-competition provision is unenforceable, as the state court held in *Richard v. Weeco Inter'l Corp.*, Cause No. 2008-09986, in the 152d Judicial District of Harris County, Texas.

---

[19]     Plaintiff's ex. B-1 (Dkt. 49-5), ¶ 1.

[20]     *Id.* ¶ 2.

[21]     *Id.* ¶ 5.

*Non-Competition Provision.* Weeco argues that this court is not bound by the *Richard* case relied upon by defendants.[22] *Richard* has no collateral estoppel, or res judicata effect in this court.[23] But the non-compete provision here fails as a matter of law for the same reason cited by the state court, *i.e.*, it is not limited in geographic scope. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 663 (Tex. 1990) (limitations concerning time, geographical area, and scope of activity must be no greater than necessary to protect the promisee's interest). Gonzalez is entitled to summary judgment to the extent Weeco has sued for breach of the non-competition provision.

However, the mere fact that a non-compete covenant is invalid does not render the entire contract void. "Where a contracting party agrees to perform separable acts, and one is void, the invalid provision may be severed from the valid provision and the valid provision enforced if the intent of the parties is not thereby frustrated." *Zep. Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 662 (Tex. App. – Dallas 1992, no writ); *Hi-Line Elec. Co. v. Dowco Elec.*

---

[22]  Defendants' brief assumes that Weeco is suing only for breach of the confidentiality agreement, and addresses the non-compete clause only for the proposition that it renders the entire contract invalid. Weeco notes that contrary to defendants' assertions, it seeks to enforce the entire Confidentiality and Noncompetition Agreement. Response, at 21 n.2. Weeco argues that the court should reform the provision by limiting it to a reasonable geographic area instead of declaring it void. Reform is a moot point, because the time period of the restriction (two years from termination) has passed and an injunction enforcing the non-compete provision going forward would not be appropriate. *See John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App. – Houston [14th Dist.] 1996, writ denied).

[23]  As far as the court can tell, the confidentiality provision was not at issue in *Richard*.

*Prods.*, 765 F.2d 1359, 1363 n.5 (5th Cir. 1985) (applying Texas law).  The issue of severability is a question of law.  *John R. Ray & Sons*, 923 S.W.2d at 86.

In this case, Gonzalez agreed both to maintain confidentiality and not to compete for a period of two years.  Gonzalez could comply with either, neither, or both – the obligations are separable.  For example, he could compete with Weeco by going to work for another company while still complying with his confidentiality obligation.  The court concludes that the confidentiality agreement is severable from the non-competition agreement.

***Consideration.***  The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance by plaintiff; (3) breach by defendant; and (4) damages.  *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App. – Fort Worth 2010, n.p.h.).  Consideration is a fundamental element of every valid contract.  *Id.* at 670.  Consideration is a present exchange bargained for in return for a promise.  *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d. 492, 496 (Tex. 1991).  An employee's promise not to disclose confidential information, in exchange for the employer's performance of its promise to provide access to confidential information, is consideration to support a valid contract.  *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 852 (Tex. 2009) (parties formed an enforceable agreement when employer performed its promise to provide confidential information).

Gonzalez began working for Weeco in 1998.  He did not sign a confidentiality agreement at that time.  He says he was always paid on a per job basis, he was never

15

promoted, and the only change in his duties in 2001 was that he became responsible for more equipment.  He asserts that no new information was provided to him after he signed the January 4, 2001 agreement, and that everything he used in his job he knew before that date.[24]

Casey Youn, president of Weeco, asserts that Gonzalez was hired as a "green operator," and as such he did not have access to bidding information and certain procedures. In 2001, according to Youn, Weeco promoted Gonzalez to "lead operator" and gave him "at least 76 different degassing procedures," client contact information, and pricing and bidding information for various degassing jobs.[25]  The record establishes there is a factual dispute as to whether new consideration was given for the 2001 confidentiality agreement.  Defendants' motion for summary judgment on the breach of contract claim is denied.

### D.   <u>Breach of Fiduciary Duty</u>

Weeco alleges that Gonzalez breached his common law fiduciary duty as an employee not to appropriate Weeco's trade secrets.  The obligation of an employee to protect his

---

[24]    Affidavit of David Gonzalez, at 3 (Dkt. 39-6).  Weeco objects to Gonzalez's statements in his affidavit that he was not promoted in 2001 and was given no new information around the time of signing the agreement as directly contradicted by his deposition testimony.  *See* Gonzalez Dep., at 29-31, 44-45 (Dkt. 49-8).  The testimony Weeco cites does appear to indicate that at some point Gonzalez became a lead operator, but it is not clear that he considered this a promotion, or that the information he acknowledged having in order to do his job was not previously available to him.  In addition, there is at least one other statement in the deposition that contradicts those cited by Weeco.  *See* Gonzalez Dep., at 25 ("What was your title, if any, when you hired on with Weeco?  Lead operator.  Were you always a lead operator?  Yes.").  To the extent there are discrepancies between Gonzalez's trial testimony and the deposition they can be explored in cross-examination.

[25]    Affidavit of Casey Youn (Dkt. 49-4).

employer's trade secrets arises apart from the existence of a written contract, and survives the employment relationship. *American Derringer Corp. v. Bond*, 924 S.W.2d 773, 777 (Tex. App. – Waco 1996, no writ).  However, this is simply a restatement of Weeco's claim for misappropriation of trade secrets.  In *American Derringer Corp.* and *American Precision Vibrator Co. v. Nat'l Air Vibrator Co.*, 764 S.W.2d 274, 278-79 (Tex. App .– Houston [1st Dist.] 1988, no writ) (cited by Weeco), employers sued former employees for misappropriation of trade secrets.  The confidential relationship between the employer and employee was the basis for the plaintiffs' claims of improper disclosure. *Id.*  In this context, breach of a confidential relationship is an element of the misappropriation claim, not an independent claim.  Therefore, Weeco's independent breach of fiduciary duty claim against Gonzalez will be dismissed.

### E.    Tortious Interference

A cause of action for tortious interference with prospective business under Texas law requires proof (i) there was a reasonable probability that Weeco would have entered into a business relationship with a third person; (ii) defendants intentionally interfered with the relationship; (iii) defendants' conduct was independently tortious or unlawful; (iv) the interference proximately caused Weeco's injury; and (v) Weeco suffered actual damage or loss. *Plotkin v. Joekel*, 304 S.W.3d 455, 487 (Tex. App. – Houston [1st Dist.] 2009, pet. denied).  If interference is merely an incidental result of otherwise legitimate conduct, then

there is no intentional interference with plaintiff's business.  *See Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001).

Weeco alleges there was a reasonable probability it would have secured work at the Dow Hahnville and Dow Plaquemine facilities in 2007-2011, but defendants intentionally and wrongfully interfered with those opportunities by using Weeco's trade secrets and disparaging it, causing Weeco damages.

Weeco has submitted evidence that it consistently performed work for Dow Hahnville and Dow Plaquemine in the approximately 10 years prior to the formation of Superior Degassing.  Weeco's evidence indicates that it performed phase I of a degassing project at Dow Plaquemine in early 2010, but despite an email from someone at that facility saying they would be back in touch in a couple months, Weeco was never contacted about performing phase II of the project.  Weeco's evidence indicates it last worked for Dow Hahnville in 2005.[26]

According to Robbie Perkins, who managed degassing projects at Dow Hahnville, degassing takes place at Dow Hahnville three or four times a year.  Although Weeco performed that work prior to the formation of Superior Degassing, Perkins began hiring Superior Degassing in order to create a competitive pricing situation, and to have a backup in the event one or the other company was unable to perform.  He first met Gonzalez when Gonzalez worked for Weeco.  Perkins never complained about Weeco's performance and

---

[26]    Dkt. 48-2.

18

there is no reason Weeco could not work at the facility.  Although Perkins hired Superior

without engaging in a bidding process because it is easier, he has recently been instructed to

solicit bids for future work.[27]

There is evidence that Gonzalez acquired contact information for Perkins and Dow

Plaquemine through his work for Weeco.  He allegedly told these contacts that Superior's

equipment was better, and that Superior's workers spoke English better than Weeco's.

However, Weeco cannot meet its burden to establish a reasonable probability that Weeco

would have entered into further business relationships with those entities absent the alleged

activity by Gonzalez.

The first job Superior did was in July 2008 at Dow Hahnville.  Perkins degassed units

at Dow Hahnville 3-4 times a year, and yet Weeco's summary of its Dow work history[28]

shows no work for Dow Hahnville after November 2005.  In addition, Perkins says that the

amount of degassing work available at Dow Hahnville has decreased.[29]  It is pure speculation

to assume that absent interference from defendants, Weeco would have been given more

work at Dow Hahnville or Dow Plaquemine.  The court concludes that summary judgment

is appropriate on Weeco's claim for tortious interference with prospective business

relationships.

---

[27]     Perkins depo. (Dkt. 49-10), at 13-18, 32-34, 53-54.

[28]     Dkt. 48-2.

[29]     Perkins dep., at 54.

19

**<u>Conclusion</u>**

Defendants' motion for summary judgment on Weeco's claims for copyright infringement, business disparagement, violation of Texas Business and Commerce Code § 16.29, breach of fiduciary duty, and tortious interference with prospective business relationships is granted.  Summary judgment is also granted as to Weeco's misappropriation of trade secrets claim to the extent it is based on procedures published on its website, contacts, rate and profit margin information, customer reports, and business forms.

Defendants' motion for summary judgment on Weeco's claims for misappropriation of trade secrets related to the fabrication of the trailer and 76 confidential degassing procedures and for breach of contract is denied.

Trial on the surviving claims is set for August 29, 2011.

Signed at Houston, Texas on June 24, 2011.


Stephen Wm Smith
United States Magistrate Judge